UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ALPHA GAS AND ELECTRIC, LLC<br><br>    Defendant. | Case No. 7:15-CV-05299-KMK |

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CONDITIONAL CERTIFICATION OF CLASS AND ENTRY OF SCHEDULING ORDER**

**I. INTRODUCTION**

Plaintiff Stewart Abramson ("Plaintiff") submits this memorandum of law in support of his request for preliminary approval of a class settlement in this litigation, in which Plaintiff has asserted that the defendant, Alpha Gas and Electric, LLC, ("Alpha") allegedly placed thousands of telemarketing calls to consumers in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) (the "TCPA").[1] The terms of the proposed settlement are detailed in a Stipulation of Class Action Settlement (the "Settlement")[2] which resolves all claims asserted in this class action. By this Motion, the Plaintiff seeks, *inter alia*, preliminary certification of a settlement class, approval of claims procedures, and the approval of his proposed form and

---

[1] The statement of facts, analysis and conclusions stated herein are made by and on behalf of the plaintiff and the proposed settlement class. Defendant denies liability and nothing stated herein constitutes an admission, explicit or implied, on Defendant's behalf or may be used for any purpose should the Court deny this motion for preliminary approval or should the settlement of this matter for any reason not become fully effectuated. Those issues notwithstanding, Defendant has confirmed to Class Counsel that it supports the Motion insofar as it facilitates the settlement per the parties' Settlement Agreement.

[2] The Settlement Agreement, with all exhibits, is attached to this Memorandum at Exhibit 1.

method of class notice, all as set forth in the Settlement Agreement. The following Memorandum describes in detail the reasons why preliminary approval of the Settlement is in the best interests of the class, and is consistent with the provisions of Rule 23.

## II. STATEMENT OF THE CASE AND SUMMARY OF THE PROPOSED SETTLEMENT

On July 8, 2015, Plaintiff filed a class action complaint (the "Complaint") in the United States District Court for the Southern District of New York against Alpha captioned 7:15-cv-05299 (the "Action"). The Complaint alleged that Alpha violated the TCPA by sending unsolicited telemarketing calls to the cell phones of consumers via an Automatic Telephone Dialing System ("ATDS"). The parties then engaged in contested litigation for well over a year. Alpha made an Offer of Judgment to the Plaintiff. The offer was rejected and Alpha petitioned the Court to stay this matter, which it did, pending the United States Supreme Court's decisions in *Campbell-Ewald* (effect of an offer of judgment on a putative class action) and *Spokeo* (whether, absent a showing of concrete harm, a Plaintiff can establish article III standing). After the issuance by the Supreme Court of its decisions in *Campbell-Ewald* and *Spokeo*, respectively, the parties agreed to continue the stay to facilitate settlement discussions. Alpha indicated that it did not have insurance or sufficient assets to survive if it was found liable for the alleged violations of the TCPA, which it denied and continues to deny, and a judgment for the full amount of the potential liability were entered against it in this case. Following Alpha's voluntarily production of financials, which confirmed its financial position, settlement negotiations commenced in earnest. With an understanding of the size of the class and Alpha's financial situation, the parties jointly asked for a referral to mediation. On August 8, 2016, the parties mediated for a full day and reached the agreement that is being presented to the Court. The essential elements of the proposed agreement, discussed in greater detail below, include:

- The class consists of all individuals or entities whose phone numbers were contained on call records voluntarily produced by Alpha to Plaintiff and his expert.

- Notice will be provided to all class members via both direct mail and by broad internet publication. Class members who received Alpha telemarketing calls on their cell phones will receive actual notice. The entire class will receive notice via internet publication.

- Alpha will pay $1,100,000 ($1.1 million dollars) into a common fund to pay claims, expenses and fees. Only class members who received telemarketing calls on their cell phones in violation of the TCPA are eligible to receive cash compensation.

- Any monies remaining after the distribution to the class will be donated to a *cy pres* charity recommended by the parties and approved by the Court.

- Alpha has agreed to implement remedial measures to ensure future compliance with telemarketing laws.

### III. PLAINTIFF'S STATEMENT OF THE FACTS

Plaintiff is a consumer who long has been inundated with illegal telemarketing calls. Alpha is a New York corporation in the business of providing gas and electric service for both residential and commercial customers in New York, New Jersey, Ohio and Pennsylvania. *See* www.alphagasandelectric.com/about-us/. On June 1, 2015, Alpha allegedly placed a telemarketing call to [insert number] using an ATDS. An ATDS is essentially a computer that allows a telemarketer to make many telemarketing calls at a time. The computer is then programmed to dial numbers and to only transfer to a live person those telemarketing calls that are answered. In this manner, a telemarketer can efficiently call a large number of consumers but only pay its employees to speak to live persons. Plaintiff's expert witness, Jeff Hansen of Hansen Legal Technologies has analyzed Alpha's call records, which were produced voluntarily on or about April 6, 2016, and has concluded that Alpha allegedly made or caused to be made 452,124 telemarketing calls to 251,504 unique cell telephone numbers.

## IV. PLAINTIFF'S STATEMENT OF THE LAW

Although telemarketing via ATDS may be efficient for telemarketers, it has long been considered annoying to consumers and invasive of their privacy rights, particularly where such calls are made to cell phones. The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones. The TCPA bans persons and entities from initiating telephone calls using an ATDS to any telephone number assigned to a cellular telephone service absent prior express written consent. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1). Not surprisingly, given the scope of unauthorized telemarketing previously recognized by Congress in implementing the TCPA, the relatively small monetary recovery under the TCPA for each claim, and the simple elements required to prove a TCPA violation, many consumers have sought to enforce their rights under the TCPA via class actions. In fact, in January of 2012, the U.S. Supreme Court issued its opinion in *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), holding that federal courts have federal question jurisdiction under the TCPA, and recognizing that the class action vehicle is the most appropriate way to provide consumers with redress for violations covered by the TCPA, stating:

> Arrow's floodgates argument assumes "a shocking degree of noncompliance" with the Act . . . and seems to us more imaginary than real. The current federal district court civil filing fee is $350. 28 U.S.C. §1914(a). How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court? Lexis and Westlaw searches turned up 65 TCPA claims removed to federal district courts in Illinois, Indiana, and Wisconsin since . . . October 2005 . . . All 65 cases were class actions, not individual cases removed from small-claims court. There were also 26 private TCPA claims brought initially in federal district courts; of those, 24 were class actions.

*Mims,* 132 S. Ct. at 745. Thus, the Supreme Court points to the class action vehicle as an appropriate means by which TCPA claims may be pursued. Since the enactment of the TCPA, trial and appellate courts nationwide have scrutinized and generally approved consumers' use of

the class action vehicle to combat unauthorized telemarketing. The Seventh Circuit Court of Appeals noted that class certification of TCPA claims is "normal" because the main questions that arise in TCPA class actions are "common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014). Other federal district courts are in accord. *See Bee, Denning, Inc. v. Capital Alliance Grp.*, No. 13-cv-2654-BAS-WVG, --- F.R.D. ---, 2015 WL 5675798, at *14 (S.D. Cal. Sept. 24, 2015) (certifying two classes under the TCPA) ("In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." ). Accordingly, courts generally certify TCPA claims. *See Krakauer v. Dish Network L.L.C.*, --- F.R.D. ---, No. 1:14-CV-333, 2015 WL 254293 (M.D. N.C. Sept. 9, 2015) (certifying class of individuals to whom automated telemarketing calls were placed to cellular telephones and class of individuals to whom telemarketing calls were placed to numbers that had been on the NDNC for more than 30 days)[3]; *Booth v. Appstack, Inc.,* No. C13–1533JLR, 2015 WL 1466247, at *16–17 (W.D. Wash. Mar. 30, 2015) (certifying class of individuals to whom automated calls were placed to cellular telephones); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *6 (W.D. Wash. July 29, 2015) (finding commonality satisfied where TCPA claims were predicated on the use of an automated dialing system to make calls on behalf of defendant); *Whitaker v. Bennett Law, PLLC*, No. 13-cv-3145-L(NLS), 2014 WL 5454398, at *7 (S.D. Cal. Oct. 27, 2014) (certifying class of individuals to whom automated calls were placed to cellular telephones); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) (certifying two litigation classes for automated calls made to either a cellphone or landline that advertised free cruises in exchange for participation in various surveys); *Kristensen v. Credit*

---

[3] Plaintiff's class counsel are also part of the trial team in *Dish.*

5

*Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (certifying nationwide class of individuals who allegedly received text messages in violation of the TCPA); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 693 (S.D. Fla. 2013) (certifying a litigation class comprised of all Florida residents who received an automated telephone call on their cellphone); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12 cv-0964, 2013 WL 4774763, *11 (S.D. Cal. Sept. 5, 2013) (certifying class of persons who received autodialed calls with a prerecorded message on their cell phones); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) (certifying class of cell phone owners who received text messages promoting the defendant's pizza products); *Mitchem v. Ill. Collection Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying litigation class consisting of all persons who received a prerecorded voice message on their cellphones).

## V. THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

Rule 23 of the Federal Rules of Civil Procedure provides that class certification is appropriate upon a showing by the plaintiff that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-614 (1997).

In addition, in order to obtain certification pursuant to Rule 23(b)(3) the plaintiff must also show that common questions of law and fact predominate over individualized questions, and that the class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b).

## A. The Proposed Class Satisfies The Numerosity Requirement

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982). The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 Newberg on Class Actions (3d ed. 1992), §7.22.A. In this case, over 250,000 class members allegedly received telemarketing calls from Alpha on their cell phones. Numerosity in this case is easily satisfied.

## B. Rule 23(a)(2) – Commonality – and Rule 23(b)(3) – Common Questions of Law or Fact Predominate

Rule 23(a)(2) requires that the court determine whether there are questions of law or fact common to the class. Rule 23(b)(3) similarly requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if class wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44

(D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶ 94,943, at p. 95, 254 (N.D. Ill. 1990). The "common questions" may be the existence and legality of a standard business practice. *Haywood v. Superior Bank*, 244 Ill. App.3d 326, 614 N.E.2d 461, 464 (1st Dist. 1993); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 774 (N.D. Ill. 1989). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984).

Because TCPA litigation, like this case, typically involves thousands of allegedly illegal telemarketing violations that are substantially similar, if not identical, to one another, courts very frequently find commonality. *See, e.g.*, *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577 (Mo. App. 2010); *Targin Sign, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp.2d 894 (N.D. Ill. 2010); *CE Design v. Beaty Const., Inc.*, 2009 WL 192481 (N.D. Ill. 2009); *Bellows v. NCO Financial Systems, Inc.*, 2008 WL 4155361 (S.D. Cal. 2008); *G.M. Sign, Inc. v. Franklin Bank*, S.S.B., 2008 WL 3889950 (N.D. Il. 2008); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp.2d 802 (N.D. Ill. 2008); *Display South, Inc. v. Graphics House Sports Promotion, Inc.*, 992 So.2d 510 (La. App. 1 Cir. 2008); *Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642 (W.D. Wash. 2007); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind. App. 2003); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844 (Ariz. App. 2002); *Nicholson Hooters of Augusta, Inc.*, 537 S.E.2d 468 (Ga. App. 2000).

In this case, the common questions of fact and law include:

  a. Whether Alpha violated the TCPA by making telemarketing calls to putative class members' cell phones via an ATDS.

  b. Whether Alpha knowingly or willfully violated the TCPA, which it denies; and

  c. The appropriate damages to be awarded to each member of the Settlement Class.

Accordingly, the commonality and predominance requirements of Rule 23 are easily satisfied.

  **C. <u>The Proposed Class Satisfies The Typicality Requirement</u>**

  Rule 23 requires that the claims of the named plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

This inquiry "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as claims of the class at large." *Retired Chi. Police Ass'n*, 7 F.3d at 597.

  In this case, the claims of the Plaintiff and the class all arise from the same alleged telemarketing campaign for which they assert that Alpha is responsible. The Plaintiff, like all class members, has allegedly sustained identical statutory damages. The claims of the Plaintiff are "typical" and "similar" to all other class members as they allegedly arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory as the members of the class.

### D.  Plaintiff and His Counsel will Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). As stated by the U.S. Supreme Court in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591:

> The adequacy inquiry … serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.

*Id.* at 625-26. As to the named plaintiff, courts usually look simply to whether the plaintiff's interests are in any way antagonistic to or in conflict with those of the class members. *In re Playmobil Antitrust Litigation*, 35 F. Supp.2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed'").

In this case, the Plaintiff's interests are co-extensive and not in conflict with those of the class members and no antagonistic or conflicting interests exist between the Plaintiff and the proposed class. Indeed, the Plaintiff and the class members have suffered the same type of alleged harm and share the same interests in establishing the alleged wrongful nature of Alpha's alleged conduct. The Plaintiff has elected not to solely pursue his individual claims in this matter, but to vindicate the rights of all individuals or entities who are alleged to have been similarly aggrieved, and to, thus, hold the Alpha accountable for its alleged telemarketing practices.[4]

---

[4] On August 4, 2015, Alpha sent Plaintiff an Offer of Judgment that would have resolved and extinguished his individual TCPA claims. Plaintiff recognized and honored his obligation to represent the interests of the class and rejected this Offer of Judgment. If not for the Plaintiff's diligence in this regard, there would be no class or class settlement.

Finally, should the Court certify the proposed Settlement Class and appoint Plaintiff as class representative, the Court must also appoint counsel pursuant to Rule 23(g)(l). In pertinent part, that rule requires consideration of:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). There is a general presumption of such competence for all members of the bar in good standing unless evidence to the contrary is adduced. *E.g., Hertz v. Canrad Precision Industries, Inc.*, No. 69 CIV 174, 1970 WL 236, *1 (S.D.N.Y. 1970) ("Plaintiffs' counsel are experienced in the area of law involved in this case. Until the contrary is clearly demonstrated, we will assume that members of the bar are skilled in their profession. . . . In point of fact, we find substantiation of the skill of plaintiffs' counsel in the papers submitted to this Court on the instant motion."); *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1012 (Bankr.E.D.N.Y. 1986) (same).

In this case, the Plaintiff has hired lawyers who are experienced in class action and consumer litigation, each of whom have significant experience litigating TCPA consumer class actions to provide the required level of representation.. *See* Exhibits 2-3, Affidavits of Plaintiff's Counsel. These affidavits set forth Plaintiff's counsel's qualifications to represent the interests of the class.

### E. The Class Action is Superior to Other Available Methods for Resolving This Controversy

Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is superior to other available methods for the fair and efficient adjudication of a controversy, which include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights, and have suffered small amounts of damages such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

> Although a determination of superiority necessarily depends greatly on the circumstances surrounding each case, some generalizations can be made about the kinds of factors the courts will consider in evaluating this portion of Rule 23(b)(3). The rule requires the court to find that the objectives of the class-action procedure really will be achieved in the particular case. In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.

*Stillmock* at 274 *quoting* 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed.2005). This principle is particularly applicable to the instant case and weighs heavily in favor of class certification as the most superior method of adjudication. The TCPA provides for minimum statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). Enforcement of this statute, however, requires individual consumers to initiate litigation and incur their respective costs and sacrifice time to prosecute individual actions. The prospect (and related cost and investment of time) of recovering $500 per call in statutory damages is too low for most people to promote prosecution of individual suits under the TCPA.

Finally, in assessing whether class certification is the "superior" method to adjudicate the litigation, Rule 23(b) requires that the Court consider the desirability of proceeding via class action in contrast to allowing individual claims to proceed on their own, including an assessment of the difficulties in managing the dispute as a class action. As to these elements of the analysis, class certification is the preferred course to pursue. The individual litigation of such an alleged phenomenal number of claims would consume a vast amount of judicial resources in trial courts across the United States. The alleged misconduct in this case flows from alleged telemarketing practices that are factually uniform as to individual class members. Damages are set by statute and will be calculated by simple multiplication. Based on voluntary discovery, subject to a confidentiality agreement, plaintiff's expert asserts that the class consists of hundreds of thousands of consumers located throughout the United States who can be given actual notice of their opportunity to file a claim. Class adjudication of this dispute is by far the most efficient and effective means to effectuate the proposed settlement.

## VI. THE PROPOSED SETTLEMENT

### A. The "Class List" and The "Settlement Class"

For settlement purposes only, the parties have stipulated to the certification of a class (the "Class List") that includes all individuals and entities whose phone number(s) were listed in the calling records voluntarily produced on or about April 6, 2016 by Alpha to plaintiff's expert Jeffrey Hansen, of Hansen Legal Technologies. Mr. Hansen has examined the Class List and has identified 251,504 unique cellular telephone numbers that received telemarketing calls from Alpha delivered via ATDS. *See* **Exhibit 1, Settlement Agreement at Paragraphs 1.22 and 1.23.**

### B. Settlement Fund and Notice[5]

The proposed settlement obligates Alpha to establish a settlement fund of $1,100,000.00 ("Settlement Fund"). *See* Exhibit 1, Settlement Agreement at **Paragraph 2.1**. If approved, Class Counsel will cause notice to be given to all individuals or entities on the Class List within 30 days of the entry of the Preliminary Approval Order of the class. Members of the class who received telemarketing calls from Alpha on a cellular phone will receive actual notice. All individuals or entities on the Class List will receive notice via publication. *See* **Exhibit 1, Settlement Agreement at Paragraphs 4.1-4.4.**

### C. Benefits To The Class

Claimants who submit valid claims shall be entitled to receive a *pro rata* share of the common fund after payment of fees and expenses. *See* **Exhibit 1, Settlement Agreement at Paragraphs 2.3.**

---

[5] Pursuant to the Class Action Fairness Act, within ten days of this filing, notice of this proposed settlement will be served on the Attorney General of the United States, and upon the Attorneys General of all fifty states. 28 U.S.C. §1715 (a).

14

### D. Final Approval and Payment of Claims

Following the deadline for objections and requests for exclusion, the parties intend to petition the Court for Final Approval. The proposed Settlement Agreement provides that if Final Approval is granted, and any applicable appellate period has run, settlement funds will be distributed *pro rata* to all individuals who file valid and timely claims. First, court approved expenses, attorneys' fees and class representative fees will be paid. Then, all remaining funds will be distributed *pro rata* to class members who file valid and timely claims. If the aggregate value of any uncashed checks is such that it is economically feasible, there will be a second round of payments sent to eligible class members. If settlement checks are not cashed within sixty days of issuance, those checks will become void following disbursement of the second round of checks, remaining funds, if any, will be distributed to a *cy pres* recipient, subject to this Court's approval. *See* **Exhibit 1, Stipulation of Settlement at Paragraph 7.**

### VII. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, REASONABLE AND ADEQUATE

Federal Rule of Civil Procedure 23(e) requires judicial approval of any and all class action settlements. Before approving a settlement, the Court must first find that the settlement is "fair, reasonable and adequate." Fed.R.Civ.P. 23(e)(2). The question for this Court is whether the settlement falls well within the range of possible approval, and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). The initial presumption of fairness of a class settlement may be established by showing that: (1) the settlement has been arrived at by arm's-length bargaining; (2) sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (3) the proponents of the settlement are counsel experienced in similar litigation. *Newberg*, at §11.41.

In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the Plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. [Citation omitted] . . . Court's do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).

### A. <u>Reasons For Approval</u>

**1. The Settlement Is Fair Under the Circumstances.**

The proposed Settlement should be approved by this Court as it presents a fair and equitable result for all parties. Consumers who file a claim will receive a *pro rata* share of the Common Fund. Alpha has voluntarily produced and class counsel has reviewed Alpha's financial records which indicate that Alpha would be unable to pay a class judgment if plaintiff were to prevail and, in such event, Alpha would likely have to close its business and could be forced into bankruptcy. Alpha has also agreed to implement remedial measures to ensure future compliance with telemarketing laws.

**2. The Settlement Resulted From Arm's Length Negotiations -- It Is Not The Product of Collusion**

The requirement that a settlement be fair is designed to protect against collusion among the parties. The proposed settlement was negotiated at arm's length by knowledgeable and experienced counsel, following an extended period of contested litigation. The settlement was arrived at only after a full-day court ordered mediation session. The contested nature of this litigation, the experience of counsel, the involvement of an experienced and skilled mediator, and the fair result reached are all illustrative of the arm's length negotiations that led to the proposed settlement.

### 3. The Factual Record Was Well Developed Through Independent Investigation

The factual record in this case was well developed by Plaintiff's counsel and the settlement was achieved only after Alpha made full and voluntary disclosure as to the circumstances attendant to the telemarketing campaign at issue and to its inability to pay a class judgment if plaintiff were to prevail. Accordingly, the proposed settlement was reached only after counsel had "a clear view of the strengths and weaknesses" of their case. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). Counsel, accordingly, were in a strong position to make an informed decision on the merits of recommending the settlement, as they have a "full understanding of the legal and factual issues surrounding [the] case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). These factors strongly support approval of the proposed Settlement.

### 4. The Settlement Was Negotiated by Experienced Counsel

As detailed in the attached affidavits, Plaintiff's counsel are experienced in TCPA class action litigation. Defendant, at all times, was also represented by very able counsel. As a result of the evaluation of counsel on both sides, the settlement was reached as a means of fully resolving the case without the burden or risks attendant with further litigation.

### 5. Continued Litigation Would Create Significant Risk

The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. Litigating this class action through class certification and trial would undoubtedly be time-consuming, expensive and risky. Had this matter proceeded further, it was anticipated that the Defendant would mount an aggressive defense raising challenges to a host of issues. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, and the possibility of further

17

appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

## VII. CONCLUSION

For all of the above reasons, the proposed Settlement presented to this Court by both parties, as memorialized in the proposed Settlement Agreement, is well within "the range of possible approval" and should be preliminarily approved in all respects, as specifically set forth in Plaintiff's Motion for Preliminary Approval of Class Settlement and Conditional Certification of Class, and Entry of Scheduling Order.

Dated: September 30, 2016                              Respectfully submitted,


/s/**Matthew P. McCue**
Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net
 *Pro Hac Vice*

Aytan Y. Bellin, Esq.
Bellin & Associates
85 Miles Avenue
White Plains, New York 10606
Tel: (914) 358-5345
Email: aytan.bellin@bellinlaw.co

Anthony Paronich
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA  02110
(508) 221-1510
anthony@broderick-law.com
 *Pro Hac Vice*

*Attorneys for Plaintiff and the proposed classes*